**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
No. 5:24-CV-_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **VERIFIED COMPLAINT** |
| | ) | **FOR DECLARATORY AND** |
| 400 S PETTIGREW, LLC; David | ) | **INJUNCTIVE RELIEF** |
| Mang; DMang Brokerage LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

The United States of America ("United States"), for itself and on behalf of its

agency, the United States Department of Veterans Affairs, alleges as follows:

## <u>INTRODUCTION</u>

1.      The United States brings this civil action against Defendants 400 S

Pettigrew, LLC, David Mang, and DMang Brokerage, LLC (together, "Defendants"),

for declaration of and quiet title to its property interest in the undeveloped parcel of

land located at 400 S Pettigrew Street, Raleigh, NC 27610 (the "Pettigrew Property").

The Pettigrew Property houses a sewer line that services the adjacent Raleigh

National Cemetery at 501 Rock Quarry Road, Raleigh, NC 27610 (the "Cemetery"),

which is on the National Register of Historic Places. For more than 150 years, the

Cemetery has served as the final resting place for deceased servicemembers of the

United States Armed Forces.

2.     As of the date of this Complaint, more than 6,000 veterans are buried in the Cemetery, including both Union and Confederate veterans of the Civil War. As part of its mission, the Cemetery has offered a restroom to visitors since at least 1916 and relied on this same sewer line since at least 1952 to do so. The Cemetery continues to perform internments for veterans and eligible family members and is open to visitors paying their respects to the deceased. Less than a year ago, Defendant 400 S Pettigrew, LLC, purchased the Pettigrew Property. Since then, notwithstanding the venerable history and current usage of the Cemetery, Defendants have threatened to disconnect the sewer line servicing the Cemetery on **November 12, 2024**. Such action would be a violation of the Cemetery's property rights and would diminish an important historic landmark.

3.     Accordingly, the United States seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202.

## PARTIES AND JURISDICTION

4.     This action arises from Claims of the United States. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1345.

5.     Plaintiff is the United States of America and has the authority to sue on behalf of the United States Department of Veterans Affairs (the "VA"). Within the VA, the National Cemetery Administration (the "NCA") honors veterans by ensuring the sanctity of their final resting places. The VA, through the NCA, administers more than 150 cemeteries, including the Cemetery in this action. Congress requires all national cemeteries to "be considered national shrines as a tribute to our gallant

dead." 38 U.S.C. § 2403(c). The Secretary of the VA is vested with authority to carry out NCA's mission. *See* 38 U.S.C. § 2404.

6.     The VA's mission is to care for those who have served in the military, as well as their families.

7.     The NCA's mission is to be a model of excellence for burial and memorials for the Nation's veterans and their families.

8.     On information and belief, Defendant 400 S Pettigrew, LLC, is a limited liability company organized under the laws of the State of North Carolina, with its registered office located in Wake County, North Carolina, which falls within the Eastern District of North Carolina.

9.     On information and belief, Defendant 400 S Pettigrew, LLC, is the owner of real property located at 400 S Pettigrew Street in Raleigh, Wake County, NC 27610 (PIN No. 1713276242, Wake County Register of Deeds).

10.     On information and belief, David Mang is a real estate broker and investor in Raleigh affiliated with Rich Realty Group. According to his website, Mang specializes in "finding dirt for builders and off-market investments for buyers, with a laser focus on the hotbeds of the Raleigh market."[1] Mang is a resident of North Carolina and is the beneficial owner of 400 S Pettigrew, LLC.

11.     On information and belief, DMang Brokerage, LLC is a limited liability company organized under the laws of the State of North Carolina. DMang Brokerage,

---

[1] *Available at* https://www.richrealtygroup.com/broker/dave-mang/ (last accessed Nov. 8, 2024).

Case 5:24-cv-00638-D-RN     Document 1     Filed 11/12/24     Page 3 of 23

LLC, retained the surveyor who conducted the October 2023 boundary survey of the Pettigrew Property. Mang is the managing member of DMang Brokerage, LLC.

12.     On information and belief, Defendants DMang Brokerage, LLC, and 400 S Pettigrew, LLC, as well as Mang's affiliated company, Rich Realty Group, all share a registered office and mailing address of 2021 Fairview Road, Raleigh, NC 27608.

13.     The subject of this dispute is a sewer line running through the Pettigrew Property which services the Cemetery. The sewer line is located in Wake County, North Carolina. A true and correct copy of an annotated map prepared by the City of Raleigh ("City") depicting the relative locations of the Cemetery, the Pettigrew Property, and the sewer line is pictured below. This map was sent as an attachment to a March 26, 2024 email from City engineer Rene Haagen to other City employees, and that email is further attached to the Complaint as Exhibit 1 and incorporated in the Complaint by reference.



14.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (b)(2). Defendants reside within the district and the property that is the subject of the action is situated within the district.

## FACTS

15.     The United States re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

### The Cemetery

16.     In April 1865, General William Tecumseh Sherman and his troops entered Raleigh and established a cemetery for the Union soldiers who perished while fighting in North Carolina. Such cemetery was located at approximately 501 Rock Quarry Road where Sherman established a Union military post, Camp Green. *See* a true and correct copy of the Raleigh National Cemetery National Register of Historic Places Registration Form, attached to the Complaint as Exhibit 2 and incorporated in the Complaint by reference.

17.     On January 17, 1871, the North Carolina General Assembly donated the land now encompassing the Cemetery to the United States, which the United States has maintained for more than 150 years and will continue to maintain in perpetuity for the public trust. In 1871, the Cemetery was bordered on the North by land owned by Bartholomew Figures Moore, the former Attorney General for the State of North Carolina. *See* a true and correct copy of the Raleigh National Cemetery Title Papers, attached to the Complaint as Exhibit 3 and incorporated in the Complaint by reference.

18.     Records from the United States Department of War ("War Department"), a predecessor to the current United States Department of the Army ("Army"), document that the United States completed construction of an outbuilding comprising a storage facility and public flush toilet on the Cemetery's grounds in 1916. All such records are available to the public, including to Defendants. *See* a true and correct copy of the War Department Records for Raleigh National Cemetery, attached to the Complaint as Exhibit 4 and incorporated in the Complaint by reference; *see also* Exhibit 2 at 6.

19.     On information and belief, specifications for the 1916 outbuilding, as well as the lodge built in 1938, included connections to the City sewer and water systems.

20.     On information and belief, installing the sewer line connecting to City sewer required bringing in equipment, digging up the ground on the Pettigrew Property, and then laying pipes.

21.     On information and belief, this project would have been performed during daylight when the owner of the Pettigrew Property would have seen it and, regardless of when the actual work was performed, the pipes and equipment would have been visible.

22.     Records from the War Department reference "repairs to public toilet and connecting lavatory in garage" in May of 1933, "fixtures installed in two toilets" in June of 1940, "toilets painted" in September of 1958, and "commode seats in

restrooms replaced" in March of 1959. *See* Exhibit 4. Additional repairs and upgrades have been funded for the outbuilding restroom at the Cemetery through the present.

23.     During World War II, at least six group burials were performed at the Cemetery and during the Vietnam War, Medal of Honor recipient William Maud Bryant was buried in the Cemetery. *See* Exhibit 2.

24.     In 1973, responsibility for managing the Cemetery was transferred to the VA.

25.     The VA, through its constituent agency the NCA, operates the Cemetery as a national monument to this day. The Cemetery is open to the public daily from sunrise to sunset and the NCA continues to conduct internments.

26.     Neighbors describe the Cemetery as a "peaceful" and "thoughtfully landscaped environment" that serves as "a somber and quiet resting place for our nation's veterans" and that "honor[s] and respect[s] their service and sacrifice for their country." *See* a true and correct copy of the March 4, 2024 email from residents of the Battery Heights Historic District, attached to the Complaint as Exhibit 5 and incorporated in the Complaint by reference.

27.     At present, the only restroom available for use by either the public visiting the Cemetery or for workers tending the Cemetery is the outbuilding restroom. Government records confirm that, since at least 1952, an active sewer line has been in continuous use running from the Cemetery through the Pettigrew Property. The sewer line allows sewage to run from the Cemetery through the

Pettigrew Property and into the City sewer system. A true and correct copy of a 1952 survey is attached to the Complaint as Exhibit 6 and incorporated by reference.

28. The City reports that it has a gap in its relevant sewer records from 1914 and 1968. Consequently, the City will not confirm that it has ever accepted custody or control of the sewer line. *See* a true and correct copy of the April 15, 2024 email from City engineer Rene Haagen, attached to the Complaint as Exhibit 7 and incorporated in the Complaint by reference.

29. A true and correct copy of a photograph depicting the Cemetery's outbuilding containing the restroom and lodge building is attached to the Complaint as Exhibit 8 and incorporated in the Complaint by reference, as well as pictured below.



## The Pettigrew Property

30. On information and belief, Bartholomew Figures Moore, a prominent lawyer and statesman, moved to Raleigh before the Civil War and purchased a tract of land that included what is now the Pettigrew Property. *See* Exhibit 3; *see also* a true and correct copy of the Battery Heights Historic District National Register of Historic Places Registration Form, attached to the Complaint as Exhibit 9 and incorporated in the Complaint by reference.

31. On information and belief, upon his death in 1878, Bartholomew Figures Moore passed this tract of land on to his son-in-law and law partner, John Thomas Gatling.

32. On information and belief, the land then passed further through the Gatling family. In the early 1990s, descendant Bartholomew Moore Gatling developed the land into the Battery Heights subdivision, which was named for the earthen batteries constructed in the area during the Civil War. *See* Exhibit 9 at 18. A 1915 survey of the planned Battery Heights subdivision was filed in the Wake County Registry at Book 1935, page 14 and at Book 1911, page 23. A true and correct copy of the public records comprising the 1915 survey is attached to the Complaint as Exhibit 10 and incorporated by reference. As part of this development, Bartholomew Moore Gatling was obligated to dedicate land to serve as future public street right-of-way.

33. The Pettigrew Property was designated as a public street right-of-way comprising a portion of the to-be-built East Davie Street. *See* Exhibit 10.

Case 5:24-cv-00638-D-RN    Document 1    Filed 11/12/24    Page 9 of 23

34.     Bartholomew Moore Gatling later died testate in 1950 and his land, including the Pettigrew Property, further passed through the Gatling family. *See Gatling v. Gatling*, 79 S.E.2d 466 (N.C. 1954); *see also* Exhibit 9 at 18.

35.     The planned portion of East Davie Street that comprises the Pettigrew Property was never built.

36.     Eventually, Bartholomew Moore Gatling's descendant John Gatling withdrew the Pettigrew Property from dedication a public street right-of-way on February 9, 1968. A true and correct copy of the declaration of withdrawal is attached to the Complaint as Exhibit 11 and incorporated by reference. Consequently, the Pettigrew Property reverted to John Gatling's private property in 1968.

37.     John Gatling died testate in 1975. His will bequeathed certain private property, including the Pettigrew Property, to North Carolina State University ("NCSU"). A true and correct copy of the Wake County Real Estate Data Ownership History for the Pettigrew Property is attached to the Complaint as Exhibit 12 and incorporated by reference; *see also* Exhibit 9 at 19.

38.     From John Gatling's death until 2023, NCSU did not develop or otherwise use the Pettigrew Property.

### The Current Dispute

39.     On information and belief, sometime prior to December 2023, Defendants approached NCSU to express interest in purchasing the Pettigrew Property. At that time, the Pettigrew Property was not listed for public sale.

40.     On December 15, 2023, Defendants purchased the Pettigrew Property

via Special Warranty Deed for $150,000. A true and correct copy of 2023 Special Warranty Deed is attached to the Complaint as Exhibit 13 and incorporated by reference.

41. The Special Warranty Deed specifically provided that the purchase was "subject to any easements, setback lines, encroachments, and other matters which would be disclosed by an accurate survey and inspection of 400 S Pettigrew Street." *See* Exhibit 13.

42. At the time of the purchase, there were visible markings in both the Pettigrew Property and the Cemetery showing that the sewer line was running from the Cemetery through the Pettigrew Property. Specifically, there was an exposed sewer manhole labeled "sewer" and a green metal pole labeled "caution" "sewer main" "call City of Raleigh" with telephone number "(919) 857-4540" on the Pettigrew Property. A true and correct copy of photographs depicting the sewer manhole and green metal pole are attached to the Complaint as Exhibit 14 and incorporated in the Complaint by reference, as well as pictured below.

Case 5:24-cv-00638-D-RN    Document 1    Filed 11/12/24    Page 11 of 23

 

43.     Dialing telephone number (919) 857-4540 connects callers to the City of

Raleigh Public Utilities Department.

44.     The green metal pole is plainly visible from both the Cemetery and the

backyards of homes adjacent to the Pettigrew Property that front Bart Street.

45.     A true and correct copy of a photograph depicting the green metal pole

as viewed from the Cemetery is attached to the Complaint as Exhibit 15 and

incorporated in the Complaint by reference, as well as pictured below. The green pole

is circled in red in the below photograph.



46.    On information and belief, Defendants did not walk through the Pettigrew Property to see if there were any physical indications of competing property rights prior to purchase.

47.    In October 2023, Defendants obtained a basic boundary survey of the Pettigrew Property. On information and belief, Defendants' surveyor did not properly inspect the Pettigrew Property and locate the visible markings indicating the sewer line. A true and correct copy of a Defendants' basic boundary survey is attached to the Complaint as Exhibit 16 and incorporated in the Complaint by reference.

48.     Prior to purchasing the Pettigrew Property, Defendants did not make a federal public records request which would have shown the existence of the sewer line.

49.     After purchasing the property, Defendants intended to build four flag-lot residences and submitted development plans to the City, including a request for a variance. A true and correct copy of Defendants' December 2023 application for variance and preliminary plans are attached to the Complaint as Exhibit 17 and incorporated in the Complaint by reference.

50.     Sometime on or before March 26, 2024, neighbors contacted the City to express concerns about Defendants' development plans because they knew the Pettigrew Property contained the sewer line. A true and correct copy of a March 26, 2024 email from City engineer Rene Haagen to other City employees is attached to the Complaint as Exhibit 18 and incorporated in the Complaint by reference. An undated letter from concerned citizens was included as an attachment sent with this March 26, 2024 email.

51.     The City then inspected the Pettigrew Property in or about March 2024. *See* Exhibit 1.

52.     The City's inspection revealed "a dead-end manhole on the property that is marked by a green sewer main marker post." *See* Exhibit 1.

53.     City workers used a camera to determine the manhole connected to the active sewer line servicing the Cemetery further connected to the City sewer. *See* Exhibit 1.

54.    The City confirmed the sewer line's existence to Defendants in an email on or about March 26, 2024. A true and correct copy of a March 26, 2024 email from City planner Justin Bucher to Defendant Mang is attached to the Complaint as Exhibit 19 and incorporated in the Complaint by reference.

55.    Thereafter, Defendants contacted the VA in or about April 2024 to discuss removing the sewer line. Defendants demanded that the VA remove the sewer line at the public's expense or pay an exorbitant amount to purchase the property.

56.    The VA, in turn, contacted the U.S. Attorney's Office for the Eastern District of North Carolina ("USAO-EDNC") in July 2024. Counsel for the parties met on July 30, 2024, to discuss the sewer line. Defendants stated that they would follow up with a proposal on how to relocate the sewer line.

57.    They did not. Instead, on October 2, 2024, Defendants sent a letter via email to the VA and USAO-EDNC stating that they would "seal" and "disconnect[]" the sewer line servicing the Cemetery on October 14, 2024. A true and correct copy of the October 2, 2024 correspondence from Defendants to the VA is attached to the Complaint as Exhibit 20 and incorporated in the Complaint by reference.

58.    Defendants then agreed to postpone disconnecting the sewer line until November 13, 2024, while counsel negotiated to resolve the dispute.

59.    The parties have been unable to do so. Defendants have informed the United States that they will now proceed with disconnecting and removing the sewer line a day earlier on **November 12, 2024**, unless the United States pays Defendants $250,000 to relocate the line—which is more than Defendants paid for the Pettigrew

Property. At Defendants' request, the United States has attached a true and correct copy of their November 7, 2024 correspondence as Exhibit 21.

60. Removal of the sewer line, which has been in existence since no later than 1952, will cause irreparable harm. Without this sewer line, the VA cannot provide restroom facilities with running water for visitors and workers. As a result, the VA's and NCA's abilities to fulfill their missions will be impeded, and the relatives of veterans, visitors, and other citizens will have their access to this historic landmark diminished.

61. Furthermore, setting aside costs for designing and permitting a new sewer line on United States' property, the only reasonable connection to the City sewer is via Bart Street. Thus, any new sewer line on United States' property likely would require trenching through and disturbing gravesites. A true and correct copy of two screenshots depicting City sewer line access surrounding the Cemetery is attached to the Complaint as Exhibit 22 and incorporated in the Complaint by reference, as well as pictured below. This City GIS data is publicly available online at https://www.wake.gov/departments-government/geographic-information-services-gis/maps-apps-data/imaps-information (last accessed November 8, 2024).





## CLAIMS FOR RELIEF

### Count I: Easement by Estoppel

62.     The United States re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

63.     The United States has obtained an easement by estoppel.

64.     At the time the United State built the sewer line through the Pettigrew Property, the owner of that servient estate was fully aware of its rights over his property.

65.     The United States relied upon an easement when it built the sewer line through the Pettigrew Property.

66.     The United States did not and could not secretly or covertly build any sewer line. Any owner of the Pettigrew Property would have been able to see the construction and known what was occurring.

67.     On information and belief, the owner of Pettigrew Property acquiesced in or induced the construction of the sewer line.

68.     Based on that acquiescence or inducement, the United States expended public funds building and maintaining its sewer line and constructing a restroom with flush toilets and running water for its employees and visitors.

69.     On information and belief, the Cemetery cannot build a different sewer line or otherwise connect to the City sewer line without risk to a 150-year-old national monument.

70.     Any disruption to the sewer line would be prohibitively expensive and an unnecessary drain on the public fisc.

71.     Equity requires that the Court declare the United States has an easement by estoppel so that the Cemetery may continue to execute its public mission.

## Count II: Prescriptive Easement

72.     The United States re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

73.     In the alternative, the United States has obtained a prescriptive easement.

74.     The United States has been using the sewer line running through the Pettigrew Property since at least 1952. This use has been continuous and uninterrupted.

75.     At all relevant times, the United States has used the sewer line under the belief that it has the right to do so. In the alternative, the United States' use was both adverse and hostile to the rights of all relevant owners of the Pettigrew Property.

76.     At all relevant times, the United States' use has been open and notorious such that the owner of the Pettigrew Property had notice of the easement. The sewer line running through the Pettigrew Property and servicing the Cemetery is accessible through a plainly visible sewer manhole located on the Pettigrew Property. On information and belief, at all relevant times, the manhole is further marked by a green metal pole labeled "caution" "sewer main" "call City of Raleigh" with telephone

number "(919) 857-4540," which connects callers to the City of Raleigh Public Utilities Department. The green metal pole is visible from adjacent properties.

77. The easement has been used in the same manner, by the same estate, for the same purpose for over 70 years. To wit, the United States has used the sewer line to move sewage from the Cemetery to the City sewer for the life of the easement.

78. Accordingly, the Court should declare that the United States has a prescriptive easement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully prays unto the Court:

1. That the Court enter an Order permanently enjoining Defendants from encroaching on the United States' use of the sewer line;

2. That the Court enter an Order declaring that the United States has an easement by estoppel for its sewer line that burdens the Pettigrew Property;

3. That, in the alternative, the Court enter an Order declaring that the United States has a prescriptive easement for its sewer line that burdens the Pettigrew Property;

4. That the United States be awarded costs, attorneys' fees and interest as allowed by law; and

5. That the Court orders such other and further relief in favor of the United States as it deems just and proper.

[signature block on following page]

Respectfully submitted this 12th day of November, 2024.

MICHAEL F. EASLEY, JR.
United States Attorney

BY:   */s/ K. Paige O'Hale*
K. PAIGE O'HALE, Deputy Chief
JONATHAN H. SILBERMAN
KATHERINE A. KING
Assistant United States Attorneys
Civil Division
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
Facsimile: (919) 856-4821
Email: paige.ohale@usdoj.gov
NC Bar No. 44667

*Counsel for the United States of America*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, J. Phillip Smyre, state and declare under penalty of perjury:

1.     I am currently employed as Director with the National Cemetery Administration, a constituent agency of the U.S. Department of Veterans Affairs. The statements made in this verification are based on my personal knowledge and information available to me in the course of my official duties.

2.     In my official capacity as Director, I am responsible for operations of the Raleigh National Cemetery located at 501 Rock Quarry Road, Raleigh, NC 27610.

3.     In my official capacity as Director, I have reviewed the Complaint prepared in the matter of *United States v. 400 S Pettigrew, LLC, et al.* Based on my personal knowledge and information available to me in the course of my official duties, I know the factual statements contained in the Complaint to be true. If called on testify, I would testify competently and consistently with the factual statements made in the Complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of November, 2024, Salisbury, NC.


J. PHILLIP SMYRE
Director
National Cemetery Administration
U.S. Department of Veterans Affairs

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 12th day of November, 2024, served a copy of the foregoing upon the below-listed parties by electronically filing the foregoing with the Court on this date using the CM/ECF system, electronic mail, and placing a copy in the U.S. Mail to the following:

Vincent Nicolsen, Esq.
vincent@cityofoakslaw.com

Hunter Winstead, Esq.
hunter@cityofoakslaw.com

City of Oaks Law
2021 Fairview Rd
Raleigh, NC 27608

*Counsel for Defendants 400 S Pettigrew, LLC,*
*David Mang, and DMang Brokerage, LLC*

BY:   */s/ K. Paige O'Hale*
K. PAIGE O'HALE
Assistant United States Attorney
Deputy Chief, Civil Division
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
Facsimile: (919) 856-4821
Email: paige.ohale@usdoj.gov
NC Bar No. 44667

*Counsel for the United States of America*